## Case No. 5,006.

### In re FOX.

## Case No. 5,007.

### In re FOX et al.

[8 Chi. Leg. News, 313.]

Circuit Court, N. D. Illinois. June 19, 1876.[1]

DAVIS, Circuit Justice, said this case presented no difficulty for him when it was first heard, but he had since then turned the matter over in his mind a good deal, and the first impressions he had about it had been confirmed. The only point that was argued and that he had considered at all, was whether there was such a question growing out of the exercise by the district court of its summary jurisdiction, as ought to be reviewed by the supreme court. He had come to the conclusion when he had

---

[1] [Reversed in 94 U. S. 441.]

heard the case, and reflection had convinced him that he was right, that the case ought to go to the supreme court for its opinion. He did not want to express any opinion as to whether the district court had jurisdiction in this case or not. It all turned on this point in his opinion. Nor had he read the evidence with a view to ascertaining anything in relation to the merits of the transaction. A good deal could be said on both sides of that question. It was one of great importance, and he knew of no decision in this country, either by the district court or by the United States circuit court, that exactly met it. In his own opinion there were grave doubts whether the district court had summary jurisdiction of this matter; and, although, as he had stated before, he had no fixed opinion upon that question, yet he thought it was right to the party, under the rules applicable to all courts granting a writ of supersedeas. to be allowed to take the case to the supreme court. He did not wish to go on and give his opinion at all. Although he had a strong opinion as the case exists now, he did not wish to give any at all upon the question, reserving himself free, when the case shall be argued in the supreme court, in order to pass upon it. It was very certain that the question was one that ought to be passed upon by the supreme court. If the supreme court was of opinion that the district court had summary jurisdiction in this matter, the case, of course, would be dismissed. If, in the judgment of the supreme court, the district court had not the summary jurisdiction which was invoked, then the case might be retained there, and could be disposed of at that time. Had there not been so much feeling on this subject he would have had no doubt that this was a proper case to take to the supreme court. He did not believe it was the intention of congress to give the district court exclusive jurisdiction in anything. It was neither his duty nor pleasure to pass upon any questions passed upon by the circuit or district courts except what had been brought up here to be determined now. If there was any question about this case at all, with reference to the court granting a supersedeas, there was no question that when Mr. Cooper, on behalf of Crane & Hodgkins, made an application for a writ of replevin, he was guilty of a gross contempt of court. The question as to whether these parties have been in contempt or not was for the district and circuit courts to determine.

Thereupon Justice Davis directed the clerk, Bradley, to draw up the supersedeas. in order that he could sign it. Considerable side discussion ensued between Mr. Cooper, Mr. Ayers, and Justice Davis regarding the matter. Justice Davis said that inasmuch as the property had been replevied from Conro & Carkin. contracts made, and the season pretty well advanced, he was of the opinion that it would be about the proper thing

to place the property in the hands of a receiver until the matter could finally be disposed of. The great difficulty, he said, existed in the bad feeling between the respective parties; it was entirely wrong to go into the state court for the purpose of obtaining the property in question when it was in the bankruptcy court of the United States. That, however, was a matter, he said, between Judges Drummond and Blodgett. He thought there was not a spirit of compromise manifested by either side.

### Case No. 5,008.

### FOX v. BLOSSOM.

[17 Blatchf. 352.] [1]

Circuit Court, D. Connecticut. Dec. 18, 1879.

Thomas E. Graves, for plaintiff.

Edward Goodman and John J. Hill, for defendant.

[1] [Reported by Hon. Samuel Blatchford. Circuit Judge, and here reprinted by permission.]

SHIPMAN, District Judge. This is a bill in equity, by a mortgagee out of possession, against a prior mortgagee and the mortgagor in possession, praying that the prior mortgage may be decreed to be cancelled, upon the ground that, more than fifteen years prior to the date of the bill, the mortgagor paid the notes secured by said mortgage, and that, for more than fifteen years, the mortgagee has had no equitable interest in the land conveyed by said deed, and that, during all said term, the mortgagor has been in full and exclusive possession of said land, adversely to said prior mortgagee, and paying no interest upon said mortgage notes. The bill was served October 30th, 1877. Said prior mortgagee has brought a cross-bill, praying for a foreclosure of his mortgage.

On or about June 6th, 1854, Orange D. Day executed and delivered to Frederick A. Blossom a mortgage of that date upon land in Killingly, in this state, correctly described in said bill, to secure five promissory notes of $1,000 each, payable respectively in four, six, twelve, eighteen and twenty-four months from said date, with interest payable semi-annually. Said mortgage was duly recorded on July 14th, 1854, in the town records of Killingly. No interest or principal has been paid upon said notes. In June, 1855, Day acknowledged an indebtedness to Blossom upon said notes. There was testimony contradicted by Day, that, in 1858, he also acknowledged an indebtedness to Blossom, but, since 1855, Day has never admitted or acknowledged an existing liability to Blossom, and has never done any act recognizing the continued existence of the mortgage, or by which an acknowledgment of an existing liability could be inferred. In December, 1868, Blossom brought against Day a petition for the foreclosure of said mortgage, returnable before the supreme court for Windham county, alleging the execution of the mortgage, and the delivery and non-payment of the notes. To this petition Day filed an answer, admitting the execution and delivery of said notes and mortgage on June 6th, 1854, and that before that date he owed Blossom $4,000, but averring that said notes were executed in pursuance of an usurious agreement in regard to the forbearance of said debt, and that said notes and mortgage were void, and denying all other allegations of said petition. The petition was withdrawn during the August term, 1870. Blossom was then in Europe, where he had been detained by sickness. Ever since 1854, Day has been in the exclusive, uninterrupted use and occupation of said land, and, since 1858, at least, has occupied said land adversely to any rights of Blossom, and has held the same not recognizing any title, equitable or otherwise, existing in said Blossom. The mortgage deed to Blossom excepts from the covenant against incumbrances "a life lease to my" (the mortgagor's) "mother." There